Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone:  (602) 482-4300
Facsimile:    (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Denise Bucholtz*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Denise Bucholtz, a.k.a. Denise Velders | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| The Hartford Life and Accident Insurance Company; Deluxe Corporation; Group Long Term Disability Plan for Employees of Deluxe Corporation; | |
| Defendants. | |

Now comes the Plaintiff Denise Bucholtz (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

*Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant Deluxe Corporation (hereinafter referred to as the "Company") sponsored, subscribed to and administered a group disability insurance policy which was fully insured and administered by The Hartford Life and Accident Insurance Company (hereinafter referred to as "Hartford").  The specific Hartford policy is known as group policy GLT-024326.  The Company's purpose in subscribing to the Hartford policy was to provide disability insurance for its employees.  Upon information and belief, the Hartford policy may have been included in and part of the Group Long Term Disability Plan for Employees of Deluxe Corporation (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.  At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policy to Hartford.  Plaintiff believes that as it relates to her claim, Hartford functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

5. Upon information and belief, Plaintiff believes Hartford operated under a conflict of interest in evaluating her claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit,* Hartford's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits.

1   6. The Company, Plan and Hartford conduct business within Maricopa County
2 and all events giving rise to this Complaint occurred within Maricopa County.

*Venue*

4   7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28
5 U.S.C. §1391.

*Nature of the Complaint*

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits she may be entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about November 2, 2006 due to serious medical conditions and was unable to work in her designated occupation as a Customer Service Representative. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff applied for and exhausted all short term disability benefits.

11. Plaintiff then applied for long term disability benefits under the relevant Hartford policy. The relevant long term disability policy provides the following definition of a covered disability which applies to Plaintiff's claim:

You are disabled when Hartford determines that:
- You are prevented by:
  - Accidental bodily injury;

-3-

- - Sickness; or
  - Pregnancy

from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earnings.

After 24 months of payments, you are disabled when Hartford determines that:

- You are prevented from performing one or more of the Essential Duties of Any Occupation because of:
  - Accidental bodily injury;
  - Sickness;
  - Mental Illness;
  - Substance Abuse; or
  - Pregnancy

and as a result you are unable to earn more than an amount that is equal to your Indexed Pre-disability Earnings multiplied by the Benefit Percentage.

12.  In support of her claim for long term disability, Plaintiff submitted to Hartford medical records from her treating physicians supporting her disability as defined by the relevant Hartford policy.

13.  Hartford notified Plaintiff in a letter dated May 2, 2007 that her claim for long term disability benefits had been approved and paid benefits effective May 3, 2007 through August 17, 2010.

14.  Hartford conducted video surveillance of Plaintiff on October 28, 2009 and October 29, 2009 as well as November 24, 2009 and November 25, 2009 which consisted of two (2) videos totaling less than seventeen (17) minutes and the activity did not suggest in any way Plaintiff was able to engage in any occupation on a regular and continuous basis.

15. These videos did not observe Plaintiff engaging in any activity other than driving her vehicle and unloading her vehicle of light groceries on approximately two (2) occasions.

16. Hartford notified Plaintiff in a letter dated August 23, 2010 that it was denying her claim for long term disability benefits.

17. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the August 23, 2010 denial of her claim for long term disability benefits by a letter dated October 11, 2010. In support of her appeal, Plaintiff submitted additional medical evidence to Hartford demonstrating her total disability as defined in the relevant Hartford policy.

18. In support of her appeal, Plaintiff submitted to Hartford her July 15, 2007 Notice of Award from the Social Security Administration notifying Hartford that she had been approved for Social Security Disability Insurance benefits after that agency determined she was unable to engage in any gainful occupation due to her medical conditions. In its denial letter dated December 22, 2010, Hartford never specifically addressed why its determination was that Plaintiff could engage in work while Social Security found Plaintiff was disabled from working in any occupation. Hartford's failure to adequately consider Plaintiff's Social Security approval is a violation of ERISA [1] and Ninth Circuit case law.

19. In further support of her appeal, Plaintiff submitted to Hartford updated medical records, a Functional Capacity Evaluation and Attending Physician's Statements completed by her treating physicians who all opined she was unable to work in any occupation.

---

[1] *See Montour v. Hartford Life & Accident Ins. Co.,* 588 F.3d 623, 634 (9th Cir. 2009).

20. As part of its review of Plaintiff's claim for long term disability benefits, Hartford obtained a medical review of Plaintiff's claim from Ibrahim S. Alghafeer, M.D., who is a consulting physician for MLS.[2] Upon information and belief, Plaintiff believes Dr. Alghafeer is a long time consultant for the disability insurance industry. Plaintiff believes Dr. Alghafeer has an incentive to protect his own consulting relationships with the disability insurance industry and Hartford by providing medical review reports which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

21. As an additional part of its review of Plaintiff's claim for benefits, Hartford also obtained a medical records only review (paper review) from Rosaline Vasquez, M.D. and an Employability Analysis Report from Marvin Bryant, MS. Upon information and belief, Plaintiff believes both Dr. Vasquez and Mr. Bryant are long time consultants for the disability insurance industry and have an incentive to protect their consulting relationships with the disability insurance industry and Hartford by providing reports which also selectively review or ignore evidence.

22. In a letter dated December 22, 2010, Hartford notified Plaintiff it had denied her appeal for long term disability benefits under the Hartford policy. In the letter, Hartford also notified Plaintiff that she had exhausted her administrative levels of review and could file a civil action in federal court pursuant to ERISA.

23. On December 22, 2010, the same date as Hartford's denial, Plaintiff contacted Hartford and informed it she had undergone a Neuropsychological Evaluation and

---

[2] "The MLS Group of Companies is the leading provider of Independent Medical Evaluations, Peer Review Services, and Functional Capacity Evaluations."
*See* www.mls-ime.com.

submitted to Hartford via facsimile a complete copy of the December 13, 2010 neuropsychological report.

24. Hartford informed Plaintiff in a letter dated January 27, 2011 that it had reviewed the December 13, 2010 neuropsychological report but that it did not change its determination that she did not meet the definition of disability set forth in its relevant policy.

25. In evaluating Plaintiff's claim on appeal, Hartford had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [3]

26. Plaintiff believes the reason Hartford provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles it undertook as decision maker and payor of benefits which created an inherent conflict of interest and this conflict may also be the reason the Plan retained Hartford to administer her disability claim.

27. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Hartford and any individual who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced Hartford's decision to deny her claim.

---

[3] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

28. With regard to whether Plaintiff meets the definition of disability set forth in the Plan, the Court should review the evidence in Plaintiff's claim *de novo,* because even if the Court concludes the Plan confers discretion, the unlawful violations of ERISA committed by the Plan and its administrators as referenced herein are so flagrant they justify *de novo* review.

29. As a direct result of Hartford's decision to deny Plaintiff's disability claim she has been injured and suffered damages in the form of lost disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

30. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

31. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' unjustified denial of payment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff disability benefits and any other employee benefits she may be entitled to as a result of being found disabled pursuant to the Policy from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon, as well as any other employee benefits she may be entitled to from the Plan and/or Company as a result of being found disabled;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time she meets the conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

1         DATED this 24th day of May, 2011.

2                       SCOTT E. DAVIS. P.C.

3                 By:   */s/ Scott E. Davis*

4                         Scott E. Davis
                        Attorney for Plaintiff

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26